## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Betsy Marie Hanks, | Case No.13-cv-01472 (DSD/TNL) |
| Plaintiff, | |
| v. | **REPORT &** |
| Warden T. Beltz, | **RECOMMENDATION** |
| Defendant. | |

This matter is before the Court, Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. (ECF No. 1.) The action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable David S. Doty, United States Senior District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b). For the reasons set forth below, **IT IS HEREBY RECOMMENDED** that the Petition under 28 U.S.C. 2254 for Writ of Habeas Corpus (ECF No. 1) be **DENIED**; this action be **DISMISSED WITH PREJUDICE**; and the certificate of appealability be **DENIED**.

### I.   BACKGROUND

Petitioner Betsy Hanks is a prisoner at the Minnesota Correctional Facility at Shakopee, Minnesota. (Pet., ECF No. 1.) She was sentenced to 99 years in prison without the possibility of release after a Beltrami County Minnesota Grand Jury found her guilty of first-degree premeditated murder and second-degree intentional murder. (*Id.* ¶¶ 3, 5.)

### A. Factual Background[1]

Petitioner and Matthew Albert lived together for eight years and had four children together. Testimony indicated that they had a troubled relationship, and that Albert was controlling and did not permit Petitioner to work outside of the home. In 2009, Petitioner began spending time with L.G. Evidence was introduced at trial that Petitioner and L.G. were having an affair. The day before the murder, Albert discovered that Petitioner was with L.G. and allegedly attempted to run down L.G. with his car. In a discussion mediated by Petitioner's father that night, Petitioner and Albert agreed that Petitioner would stop seeing L.G.

The following morning, while Albert was sleeping Petitioner placed her two youngest children in the car and returned to the house where she paced around "trying to figure out what to do." After "decid[ing] that it was time to make things right[,]" Petitioner retrieved Albert's gun and shot him in the head while he was still asleep. Petitioner then left the house with her children, drove to see her father, and discarded with the gun in a ditch. Upon returning home, Petitioner found Albert was still alive and called 911 to report "that she had found her husband with a gunshot wound to his head[.]" Albert was taken to the hospital and died later that day. The cause of death was the gunshot wound. Though Petitioner initially told investigators she did not know what had happened to Albert, she later stated that her three-year-old accidentally shot him, and then admitted to shooting Albert claiming he was suicidal and wanted to end his life.

---

[1] The following facts are taken from the Minnesota Supreme Court's opinion in *State v. Hanks*, 817 N.W.2d 663, 664–66 (Minn. 2012).

Finally, Petitioner told investigators that she had shot Albert because she wanted a better life for her children.

## B. Procedural History[2]

Petitioner was indicted for first-degree premeditated murder and second-degree intentional murder. Before trial, the trial court granted Petitioner's motion for an award of fees to hire an expert witness who would inform the jury on battered woman syndrome. At trial, however, the court granted Respondent's motion to prohibit the expert from testifying based on Petitioner's failure to demonstrate that she was a battered woman and her failure to raise it as a defense. The court also excluded L.G.'s testimony that he had observed bruises on Petitioner and had witnessed Albert threaten the lives of Petitioner, the children, and himself. The jury returned a verdict of guilty for both counts of murder.

On direct appeal, Petitioner asserted that the district court erred in the following ways: (1) in denying Petitioner her constitutional right to present a defense by excluding expert testimony on battered woman syndrome; (2) in denying Petitioner her constitutional right to present a complete defense by excluding certain testimonial evidence; and (3) in convicting Petitioner of first- and second-degree murder based on conduct committed against one victim. The Minnesota Supreme Court rejected Petitioner's first two arguments, affirming her conviction for first-degree murder, and reversed and remanded to the trial court to vacate her second-degree murder conviction.

---

[2] The following facts are taken from the Minnesota Supreme Court's opinion in *State v. Hanks*, 817 N.W.2d 663, 666–67, 669 (Minn. 2012).

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, stating four grounds for relief: (1) denial of Sixth Amendment right to have witnesses in her favor; (2) denial of Fifth and Fourteenth Amendment rights to due process because the trial court erred in excluding certain testimonial statements from the record; (3) violation of Fifth and Fourteenth Amendment rights to due process by refusing to allow Petitioner's expert witness to testify; and (4) ineffective assistance of counsel. (Pet. ¶ 12.)

## II.   DISCUSSION

### A.  Standard of Review

It is well established that a district court will not entertain a state prisoner's petition for habeas corpus with respect to claims that were decided by a state court on the merits. In order to surpass this threshold, a petitioner must demonstrate that the adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364–65 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it unreasonably applies the correct legal principle to the facts of the prisoner's case. *Id.* at 365. In order for

a federal court to issue the writ, the state court's application of clearly established law must be unreasonable and not merely erroneous or incorrect. *Lyons v. Leubbers,* 403 F.3d 585, 592 (8th Cir. 2005).

Habeas relief is unavailable to a state prisoner who has failed to exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." The exhaustion requirement is satisfied when a prisoner has fairly presented the federal nature of the claim to each level of the state courts. *O'Sullivan,* 526 U.S. at 845. In order to present fairly a federal claim, the petitioner must refer "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson,* 114 F.3d 754, 757 (8th Cir. 1997) (internal quotation and citations omitted). A district court is not to look beyond a petition, brief, or similar document in determining whether a federal claim has been fairly presented. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Additionally, "mixed habeas petitions," which include both exhausted and non-exhausted claims, are to be dismissed for failure to meet the exhaustion requirement. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

When a state prisoner has failed to present fairly a federal constitutional claim in state court, the federal court must determine whether state procedural rules would permit

5

a hearing of the claim on the merits. *McCall*, 114 F.3d at 757. Under Minnesota state law, "once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'" *Id.* (quoting *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)). The petitioner remains procedurally barred from obtaining relief in federal court unless she can show the "habeas claims were unknown, or so novel that their legal basis was unknown, at the time of [her] direct appeal." *Id.* Absent a showing that either cause and prejudice or a miscarriage of justice requires a federal court to entertain the constitutional claim, a federal court is unable to consider the claim on the merits. *Id.* at 758.

## B. Exclusion of Battered Woman Syndrome Expert Testimony

Petitioner contends that the trial court erred when it excluded expert testimony on battered woman syndrome, thereby violating her due process rights. (Pet. ¶ 12, Appellant's Br. at 15, 28, *Hanks*, No. A11-0749.) The Minnesota Supreme Court thoroughly considered whether the trial court abused its discretion in excluding the expert testimony, concluding that "Hanks's constitutional right to present a complete defense was not violated by the district court's evidentiary ruling." *Hanks*, 817 N.W.2d at 670, 667–70. Based on the Supreme Court's detailed evaluation, this Court finds that the issue was adjudicated on the merits. Because Hanks does not argue that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts[,]" 28 U.S.C. § 2254(d), the Court will not consider this claim.

Even if this claim had not been adjudicated on the merits in state court, it would fail. Expert testimony on battered woman syndrome is admissible "when a battered woman claims self-defense for the murder of her abuser" or "when the State seeks to rehabilitate the credibility of a battered woman" where the defendant establishes that she "had the type of relationship about which the expert [would] testify." *Hanks*, 817 N.W.2d at 667, 668 (citations omitted). Although Hanks offered proof that Albert "was controlling and had a bad temper," this showing was insufficient to establish that Hanks had the type of relationship that warrants battered woman syndrome testimony. *Id.* at 669. Moreover, Hanks never claimed she shot Albert in self-defense nor that she was returning to an abusive relationship. *Id.* at 668. Thus, even if Petitioner's claims had not been adjudicated on the merits, they would fail in this Court.

Additionally, Petitioner asserts that her Sixth Amendment "right to have witnesses in [her] favor" was violated when the district court denied her the opportunity to present expert witness testimony on battered woman syndrome. (Pet. ¶ 12.) Because the substance of this claim is identical to that for which Petitioner claims due process violations, Petitioner could have raised this issue on direct appeal; however, she did not. (Appellant's Br. at 28, *Hanks*, No. A11-0749.) Petitioner's Appellate Brief lacks any mention of the Sixth Amendment, Petitioner's right to obtain witnesses in her favor, or any similar rights protected by the Sixth Amendment relating to expert witness testimony. *See McCall*, 114 F.3d at 757. Petitioner has not shown either cause and prejudice or that a miscarriage of justice will result if the Court denies this claim. *McCall*,

7

114 F.3d at 758. Accordingly, Petitioner's claim is barred. *See Knaffla*, 243 N.W.2d at 741.

### C. Exclusion of Evidence at Trial

Petitioner vaguely asserts that her due process rights were violated when the trial court struck from the record her father's testimony that Albert did not allow Petitioner to work outside of the home. (Pet. ¶ 12.) Petitioner acknowledges that this claim was not specifically asserted on direct appeal, "but was raised in the support of Argument II." (Pet. ¶ 12.) Indeed, Petitioner's Appellate Brief addresses the "exclu[sion] of evidence of Albert's physical abuse and threats against [Petitioner,]" (Appellant's Br. at 28), not Petitioner's father's testimony that Petitioner was not allowed to work outside of the home. In fact, neither Petitioner's Appellate Brief nor the Supreme Court opinion make any mention of Petitioner's father's testimony. Both reference only L.G.'s testimony regarding Petitioner's alleged bruises and Albert's alleged threats. (*Hanks*, 817 N.W.2d at 669–70; Appellant's Br. at 28–33.) Because Petitioner failed to challenge on direct appeal the constitutionality of the trial court's exclusion of her father's testimony, the Court finds that this claim is procedurally barred.

Based on the foregoing, the Court determines that Petitioner did not argue to the Minnesota Supreme Court that the trial court's exclusion of her father's testimony resulted in a violation of her due process rights. Accordingly, this claim is procedurally barred. *See Knaffla*, 243 N.W.2d at 741.

### D. Ineffective Assistance of Counsel at Trial

Finally, Petitioner claims that she received ineffective assistance of counsel at trial based on her defense attorney's actions with respect to the trial court's suppression of battered woman syndrome. (Pet. ¶ 12.) Although a prisoner is permitted to raise a constitutional violation by "referring to a specific federal constitutional right[,]" *McCall* 114 F.3d at 757 (quotation and citations omitted), Petitioner failed to raise this claim in state court and the Court need not address the validity of the claim as raised in the Petition.

Petitioner cites her defense attorney's failure to plead self-defense and failure to object to the district court's suppression of her father's statements taken during his deposition. (*Id.*) Petitioner argues that she was prevented from raising battered woman syndrome as a defense because her defense attorney failed to request a mental examination. (Pet'r Reply at 2 ("The State also claims there is nothing in the trial court record to indicate that [Petitioner] suffered from any mental illness or deficiency. There would not be any record of this due to the lack of [Petitioner's] defense counsel [sic] to raise this issue to the trial court.").) Petitioner, however, did not raise this claim on direct appeal. (*See* Appellant's Br. at 28, *Hanks*, No. A11-0749.) Petitioner claims that she had discussed this issue with her attorney, but "was not aware it was not [included] in [her] Appellate B]rief until [she] received a copy." (Pet. ¶ 12.) Regardless of what Petitioner intended to include in her brief, the absence of this claim on direct appeal bars her from obtaining relief in federal court. *McCall*, 114 F.3d at 757; *Knaffla*, 243 N.W.2d at 741.

Even if Petitioner's claim was not procedurally barred, it would fail on the merits. To demonstrate ineffective assistance of counsel, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms or "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense[.]" *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To meet this standard, Petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial" with a reliable result. *Id.* at 87.

Petitioner claims that her defense attorney was required by Minnesota law to plead self-defense and obtain a psychological evaluation for Petitioner. (Pet. ¶ 12.) It appears that Petitioner is referencing Rule 9.02 Subdivision 1(2)(a)(i)–(ii) and Rule 20 of the Minnesota Rules of Criminal Procedure. Rule 9.02, however, addresses defendants' *disclosure* of mental examinations. Minn. R. Crim. P. 9.02 subdiv. 1(2)(a)(i)–(ii). It does not mandate that a defense attorney obtain a psychological evaluation for a client. For its part, Rule 20 concerns the ability of mentally deficient or mentally ill defendants to participate competently in court proceedings. Minn. R. Crim. P. 20. Nowhere in her Petition does Petitioner claim that she lacked the competency to participate in proceedings, either because she could not "rationally consult with counsel[]" or "understand the proceedings or participate in the defense due to mental illness or deficiency."[3] Minn. R. Crim. P. 20.01 Subd. 2(a)–(b). (*See* Pet.)

---

[3] The Court notes that Petitioner does not argue either mental deficiency or mental illness as a defense, *see* Minn. R. Crim. P. 20.02 Subd. 1(a)–(c), and Petitioner did not offer evidence of either at trial. Accordingly, because Petitioner did not raise these arguments, the Court will not address them.

The Court finds that Petitioner's attorney's decision not to advocate for self-defense on behalf of his client was not unreasonable. There is substantial evidence to suggest that Petitioner was not acting in self-defense: Albert was asleep when Petitioner shot him; she told investigators several different stories about what had happened; and Petitioner claimed "[she] wanted 'to make things right so [Albert] can't interfere'" with her taking the children away from him.[4] *Hanks*, 817, N.W.2d at 665–66. Nor does this Court find Petitioner's attorney's conduct to be deficient and prejudicial. Petitioner claims that had self-defense been pleaded, the jury's decision would have been different. (Pet. ¶ 12.) The test for evaluating prejudice requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court need not consider whether Petitioner has met this burden because the Court does not find that Petitioner's attorney committed an unprofessional error by making the strategic decision not to plead self-defense for his client. The Court, therefore, concludes that Petitioner's claim of ineffective assistance of counsel would fail on the merits.

## III.   CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it

---

[4] According to the Minnesota Supreme Court's opinion in *Hanks*, Petitioner claimed that Albert threatened that if Hanks took their children away from him, "he'd make sure that was the last time [Hanks would] see 'em." *Hanks*, 817 N.W.2d at 666. This sort of threat is insufficient for Petitioner to claim she was entitled to use self-defense. Where a defendant has used deadly force on a victim, she must first show that she had a good faith belief "that the deceased intended to take [her] life[] or do [her] great bodily harm[]" before asserting that she acted in self-defense. *Beard v. United States*, 158 U.S. 550, 564 (1895).

11

enters a final order adverse to the applicant." 28 U.S.C. foll. § 2254. A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Hardy v. United States,* No. CIV. 01–634(JRT), CR 98–2751(JRT)/JGL), 2002 WL 1752215, at *5 (D. Minn. July 29, 2002). "To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings." *Hardy,* 2002 WL 1752215, at *5. Petitioner has made no such showing in the instant case. Therefore, this Court recommends that the certificate of appealability be denied.

### IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. The certificate of appealability be **DENIED.**

Date: July 28, 2014                                    s/ Tony N. Leung
                                                                                 Tony N. Leung
                                                                                 United States Magistrate Judge
                                                                                 District of Minnesota


                                                                                 *Hanks v. Beltz*
                                                                                 File No.13-cv-1472 (DSD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **August 29, 2014**.